UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                          No. 20-CR-2124 MV

OLUTAYO OGUNLAJA, ABEL DARAMOLA

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Mr. Daramola's Second Motion in Limine Doc. 207. The government filed a Response. Doc. 217. Mr. Daramola's co-defendant, Mr. Ogunlaja, also filed a Response. Doc. 221. The Court held a hearing on this matter on November 21, 2024. At the hearing, the Court held that it did not see a basis for granting the Motion at that time, but that the Court's analysis may change upon receipt of the transcript of the recording at issue. Having reviewed the transcript, the briefs and relevant law, and being otherwise fully informed, the Court finds that the Motion is well-taken and will be granted. However, the Court will not admit any statements contained in the recording or transcript that refer to Mr. Ogunlaja.

## BACKGROUND

On December 2, 2020, Joseph Oloaosebikan Olawuyi (a.k.a. Ibrahim Musa/Glenn Brown), Olutayo Sunday Ogunlaja, Gbemileke Bello, Adesuwa Renee Ogiozee, and Abel Adeyi Daramola, were indicted in the District of New Mexico. Doc. 1. The Indictment alleges that from approximately January 2016 through November 2016, Defendants knowingly, unlawfully, and willfully conspired to commit wire fraud, in violation of 18 U.S.C. § 1343, and aiding and abetting, in violation of 18 U.S.C. § 2. *Id.*

According to the Indictment, in January of 2016, Mr. Joseph Olawuyi used the online

1

persona "Glenn Brown" to register on eHarmony.com. *Id.* at 3. Acting as "Glenn Brown," he began a romantic relationship with the victim, B.D., who was a resident of New Mexico. *Id.* He told B.D. that he was working to repair roads in Malaysia. *Id.* Eventually, he started expressly asking for money. *Id.* After describing financial issues with the road project, he stated "I have seen the worse, starvation should not rip my life off. I just needed the balance of $36,500 . . . Today, you can try to wire $15,000. Next week on Tuesday you can then wire the remaining $20,000. Or you could even make it another $10,000 then Wednesday you can wire the remaining $10,000." *Id.* at 3. He explained that "if you should do it this way, you will be less worried and the bank won't question you so much . . . if you tend to wanna wire the whole $36,500, the bank will be too concern. Let not raise so much alarm." *Id.* Mr. Olawuyi promised B.D. that he would pay her back once he was able to get back to the United States. *Id.*

Utilizing his story that he was stuck in Malaysia and needed money to get out, Mr. Olawuyi repeatedly provided B.D. with information for various bank accounts and requested that she transfer money to those accounts. *Id.* He also asked B.D. to send him gift cards. *Id.* In total, in response to Mr. Olawuyi's requests, B.D. transferred approximately $558,500 to various bank accounts. Doc. 1 at 3-9. Of particular relevance here, in response to Mr. Olawuyi's requests, B.D. wired to Mr. Ogunlaja a total of $40,000 and to an account under the name of Daramola Cars a total of $28,000. Doc. 102 at 4.

Mr. Olawuyi was never apprehended on the charges in the instant case because he remained in Malaysia and then eventually returned to Nigeria. Since the issuance of the Indictment, he has not entered the United States. Ms. Bello entered into a pretrial diversion agreement with the government. Doc. 132 at 1. The government dismissed the charges against Ms. Ogiozee. Docs. 176, 183. Mr. Ogunlaja and Mr. Daramola are set to appear for trial on December 16, 2024. Doc.

2

205.

On August 7, 2024, Mr. Olawuyi gave an interview at the office of the Nigerian Police Force in Lagos, Nigeria. Second Motion in Limine, Doc. 207-1 at 1. FBI Special Agent Miriam Oviedo-Clark conducted the interview. *Id.* Present during the interview was FBI Foreign Service National Investigator Ayotunde Solademi, Deputy Commissioner of Police Martin Nwogo, and Investigating Police Superintendent Abbass Gadzama. *Id.* An FBI 302 report summarizing the interview was included with Mr. Daramola's Motion. *Id.* A full recording of the interview was provided by the government in advance of the pretrial conference. *See* Government's Exhibit 19. Following the pretrial conference, Mr. Daramola's counsel provided the Court with a transcript of the interview.

Mr. Olawuyi gave the interview voluntarily, as he was not in custody at the time and was free to leave the office at any point. November 21, 2024, Pretrial Conference Hearing Transcript ("H'rg Tr.") at 102:5-15. [1] He was informed of his rights and consented to waive them. Doc. 207-1 at 1 (Second Motion in Limine); Doc. 230-1 at 4:11-5:2. During the interview, Mr. Olawuyi admitted that he personally talked two women into sending him money. Doc. 230-1 at 11-13, 14-15.[2] Specifically, when SA Oviedo-Clark informed him that "it was reported that you convinced your American lover to transfer $560,000 to Ogiozee's account for a Mercedes Benz" he replied that the only transaction with Ogiozee was for $50,000 and that the money came from two different sources. *Id.* at 12-13. An unidentified male asked Mr. Olawuyi, "the $50,00, what did you get it

---

[1] The Court's citations to the transcript refer to the court reporter's original, unedited version; any final transcripts may contain slightly different page and/or line numbers.

[2] The transcript of the recording was provided to the Court as a supplement to a separate Motion to Dismiss for *Brady* Violation. Doc. 230. However, because the instant Motion deals with the same statements, this Memorandum Opinion refers to the transcript to ensure that the Court analyzes an accurate report of the statements.

for? Who did you get it for?" *Id.* at 14:21–22. Mr. Olawuyi replied that "at the time, eight years ago, yeah, I was into internet fraud, clearly, so I – I got it from the internet, the internet." *Id.* at 14:23-25. The unidentified male asked "Who in particular? Is it from two different people?" to which Mr. Olawuyi replied, "Yeah, two different people." *Id.* at 15:1-3. As the conversation progressed, Mr. Olawuyi admitted, "Yes, I scammed people in the past, which I own up to, which I knew it was terrible. I wish I could turn back the hands of time, but it's unfortunate." *Id.* at 16:5-8. When discussing the details of his prior scams on two women, Mr. Olawuyi stated that "I can remember a lady called Brenda, yeah, so that's the only thing I could remember." *Id.* at 17:9-10. He explained that he had Brenda (the victim in this case) and another victim send money to different accounts. *Id.* at 20:5-14.

In particular, Mr. Olawuyi described that "when you had someone to help you receive money, there's a (inaudible) and fourth party and a fifth party. You wouldn't know. You only did it with the person you know. So I wouldn't know how far the whole transaction were to go." Doc. 230-1 at 20:7-11; *see also Id.* at 40:17-41:1 (describing that he did not know who his intermediaries were involved with in the United States so he did not know everyone who received money as part of the fraud schemes). Regarding the structure of the scam upon the victim in this case Mr. Olawuyi stated that some of the people who received money from the victim did not know where the money was coming from. *Id.* at 29:14-18. In another statement, he described a transaction where the individual receiving money did not know that money was being put into her account. *Id.* at 22:21-23:6. He also described another fraudulent transaction in which a victim sent money to an individual who then passed the money on to a car dealer. *Id.* at 23:15-24:1.

Relevant here, Mr. Olawuyi was asked if as part of the two romance frauds he perpetrated he ever sent money to Daramola Cars. *Id.* at 28:20-21. Mr. Olawuyi stated that he did not and when

4

asked again he said, "Yeah never had to do with anything—they are separate from this (inaudible)." *Id.* at 28:22-29:1. He then stated that Daramola Cars was not the car dealer involved in the transaction with Ogiozee and that he had never heard of it before. *Id.* at 29:2-9. Mr. Olawuyi also discussed how he knew Mr. Ogunlaja and described Mr. Ogunlaja's involvement in the instant offense. *Id.* at 26:16-17, 31:25-32:1, 32:20, 36:7-8, 39:23-24.

On November 12, 2024, Mr. Daramola filed the instant Motion to admit the above statements made by Mr. Olawuyi. Second Motion in Limine, Doc. 207. On November 18, 2024, the government responded and stated that it did not object to the admission of the statements. Doc. 217. However, the government argued that under Federal Rule of Evidence 106, known as the Rule of Completeness, if some of the interview was admitted, they would seek to introduce the rest of the interview. *Id.* On November 20, 2024, Mr. Ogunlaja responded, asking to limit the admission of statements to the extent they reference Mr. Ogunlaja. Doc. 221. On November 21, 2024, the Court held a hearing on the Motion.

At the November 21, 2024 hearing, the government gave some additional information regarding the context of the FBI interview with Mr. Olawuyi. Mr. Olawuyi is not currently in custody in Nigeria and gave the interview voluntarily. H'rg Tr. at 101:20-24. It appears that he was briefly detained after Ms. Ogiozee made a claim against him under Nigerian law, but the government was unable to say for how long he was detained or when he was released. *Id.* at 101:12-15. Ms. Ogiozee's allegation was based on him transferring her fraudulent money, which led to her being charged in the instant case. *Id.* According to the government, the Nigerian government is not currently prosecuting Mr. Olawuyi on these charges, but retains the right to do so. The United States cannot extradite him while Nigeria retains the right to prosecute. *Id.* at 101:25-102:4, 102:18-19. In addition, the FBI represented that it may be disrespectful to the Nigerian government

and harmful to diplomatic relationships to even ask Mr. Olawuyi to travel to the United States to face charges. *Id.* at 113:14-21.

## LEGAL STANDARD

All admitted evidence must be relevant. Evidence is relevant "if it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action. Fed. R. Evid. 401. "Under Rule 401, a fact is of consequence when its existence would provide the factfinder with a basis for making some inference, or chain of inferences, about an issue that is necessary to a verdict." *United States v. McVeigh*, 153 F.3d 1166, 1190 (10th Cir. 1998) (citing 22 Wright & Graham, Federal Practice & Procedure, § 5164, at 42–43). To determine what evidence is relevant in a criminal proceeding, the Court examines the elements of the offense. *United States v. Montelongo*, 420 F.3d 1169, 1173 (10th Cir. 2005). Relevant evidence must, therefore, "logically advance a material aspect of the case." *United States v. Garcia*, 635 F.3d 472, 476 (10th Cir. 2011) (internal citations omitted).

Even if relevant, hearsay statements are generally inadmissible. Fed. R. Evid. 802; *see also United States v. Lozado,* 776 F.3d 1119, 1121 (10th Cir. 2015) ("Hearsay is generally inadmissible because it is considered unreliable."). Under Rule 801(c) of the Federal Rules of Evidence, "'Hearsay' means a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). A statement that is otherwise hearsay, however, may be offered for a permissible purpose other than to prove the truth of the matter asserted. *See United States v. DeLeon,* 418 F. Supp. 3d 682, 742 (D.N.M. 2019) (citing *United States v. Caraway,* 534 F.3d 1290, 1299 (10th Cir. 2008)). Under Rule 804(b)(3), an out-of-court statement that the declarant made against their own interest may be admitted in a criminal trial if it "is supported by

6

corroborating circumstances that clearly indicate its trustworthiness after considering the totality of the circumstances under which it was made and evidence that supports or undermines it." Fed. R. Evid. 804(b)(3)(B).

"A defendant seeking to admit hearsay evidence under Rule 804(b)(3) to exculpate himself must show '(1) an unavailable declarant; (2) a statement against penal interest; and (3) sufficient corroboration to indicate the trustworthiness of the statement.'" *United States v. Spring,* 80 F.3d 1450, 1460 (10th Cir. 1996), *cert. denied,* 519 U.S. 963 (1996) (citation omitted). A declarant is properly unavailable when they are absent from the trial and the proponent of their statements is not able by reasonable means to procure their attendance. Fed. R. Evid. 804(a)(5); s*ee Barber v. Page*, 390 U.S. 719, 724-25 (1968). Under Tenth Circuit precedent, "to be admissible under Rule 804(b)(3), a statement against penal interest must so far tend to subject the declarant to criminal liability that a reasonable man in his position would not have made the statement unless he believed it to be true." *United States v. Chalan*, 812 F.2d 1302, 1311 (10th Cir. 1987). The Notes of Advisory Committee on Proposed Rules make clear that whether a statement is against penal interest is a context-specific assessment. For instance, "a statement admitting guilt and implicating another person, made while in custody, may well be motivated by a desire to curry favor with the authorities and hence fail to qualify as against interest." Fed. R. Evid. 804 Notes of Advisory Committee on Proposed Rules, Exception (3); *see also United States v. Yellowhorse,* 86 F.4th 1304, 1308 (10th Cir. 2023) ("For example, the court might decline to apply the hearsay exception when the declarant deflects responsibility by shifting blame to a third-party.").

**DISCUSSION**

Mr. Daramola seeks to admit two categories of statements that Mr. Olawuyi made: 1) statements that Mr. Olawuyi engaged in fraud with an unknown number of middlemen, and 2)

7

statements that Mr. Olawuyi did not know the identities of these middlemen. Second Motion in Limine, Doc. 207 at 1. Mr. Daramola moves to admit these statements by Mr. Olawuyi under Federal Rule of Evidence 804(b)(3)(A) as statements against interest. *Id.* Mr. Daramola notes that Mr. Olawuyi will be unavailable at trial as he is currently in Nigeria and there is no plan for him to come to or be taken to the United States. *Id.* And even if he did come to the United States, he would be apprehended on the outstanding charges against him in this case. H'rg Tr. at 109:18-24. He further argues that Mr. Olawuyi's statements were against his penal interest because he was admitting to FBI agents that he had engaged in fraud. *Id.* at 109:4-11.

While the government does not seek to introduce Mr. Olawuyi's statements, it does not oppose Mr. Daramola's Motion to do so. Doc. 217 at 1. After Mr. Daramola's Motion was filed, the government amended their exhibit list to include the recording of the interview, as the best evidence of the interview. Doc. 218 at 2; Fed. R. Evid. 1002; *see United States v. Chavez*, 976 F.3d 1178, 1200-01 (10th Cir. 2020). The government noted that if Mr. Daramola successfully introduces part of the recorded interview, the government has to the right to supplement that evidence with other parts of the interview that must be included for fairness' sake under the Rule of Completeness. Doc. 217 at 1-2; *see* Fed. R. Evid. 106. The government stipulated that it would agree to a limiting instruction if necessary. *See* Fed. R. Evid. 105.

Mr. Ogunlaja argues that, if the Court is inclined to admit statements made by Mr. Olawuyi, any statements referencing Mr. Ogunlaja must be redacted. Doc. 221 at 1. Mr. Ogunlaja relies upon his Constitutional right under the Confrontation Clause to examine witnesses against him. *Id.* Because Mr. Olawuyi will be unavailable at trial and Mr. Ogunlaja has not had and will not have an opportunity to cross-examine him prior to trial, he argues that Mr. Olawuyi's statements implicating Mr. Ogunlaja are not admissible. *Id.* Ultimately, the Court finds that the statements

Mr. Daramola seeks to admit are admissible under Rule 804(b)(3) and that the government may admit the remainder of the interview under Rule 106, but the Court will not admit any statements that reference Mr. Ogunlaja.

As an initial matter, Mr. Olawuyi's statements are relevant. He describes the structure of international fraud schemes, including the level of involvement and knowledge of the middlemen who transfer money to different accounts. He also states that he was not familiar with Mr. Daramola's car company, Daramola Cars, which is alleged to have been involved in the instant scheme to defraud. Accordingly, his statements are relevant to the element of intent to defraud, which the government must prove beyond a reasonable doubt. *See* 10th Cir. Pattern Jury Instructions § 2.57 (2021).

Next, the Court finds that Mr. Olawuyi's statements fall under the statements against penal interest exception under Rule 804(b)(3). First, the parties agree that Mr. Olawuyi is unavailable, as he is currently in Nigeria with no plans to come to the United States and the government is not able to extradite him. *Spring,* 80 F.3d at 1460 (defendant must show that declarant is unavailable). Furthermore, having reviewed the transcript of the interview, the Court finds that his statements were given against his penal interest. The Tenth Circuit has made clear that "[o]ur cases applying the Rule 804(b)(3)(A) standard recognize that a statement from a declarant who is subjectively aware the statement is self-inculpatory can qualify as a statement against interest." *Lozado,* 776 F.3d at 1128. Here, several aspects of the interview indicate that Mr. Olawuyi knew that his statements were self-inculpatory. First, Mr. Olawuyi repeatedly admitted to participating in internet fraud and expressed remorse for that conduct. Doc. 230-1 at 14:23-24 ("At the time, eight years ago, yeah, I was into internet fraud."); 15:9 ("I realized internet fraud was evil."); 16 at 5-8 ("Yes, I scammed people in the past, which I own up to, which I knew it was terrible. I wish I

could turn back the hands of time, but it's unfortunate."); 46:18 ("Immediately I realized that this is evil"). He also acknowledged that the people he scammed were victims. *Id.* at 23:19-20, 25:20. Thus, the transcript shows that Mr. Olawuyi was subjectively aware that his conduct was wrongful and that his admissions were self-inculpatory. *See Crespin v. New Mexico,* 144 F.3d 641, 647 (10th Cir. 1998) (approving of a state court's finding that the declarant subjected herself to some liability because the declarant "knew her conduct was wrong").

Furthermore, there is evidence that Mr. Olawuyi was aware that he was subject to criminal liability, and thus a reasonable person in his position would have understood that the statements were against his interest as required by Rule 804(b)(3). *Lozado,* 776 F.3d at 1127 (where there is proof of the declarant's actual knowledge that statements would be against interest, then "a reasonable person in the declarant's position" would also know that the statements were against their interest). SA Oviedo-Clark read Mr. Olawuyi *Miranda* warnings before proceeding with the interview. Doc. 230-1 at 4:13-22. These warnings explicitly informed Mr. Olawuyi that "anything you say can be used against you in court." *Id.* at 4:14. Thus, from the outset, Mr. Olawuyi was aware that his statements could subject him to criminal liability. *See Jennings v. Maynard,* 946 F.2d 1502, 1506 (10th Cir. 1991) (rejecting the argument the declarant did not believe that his statement to [an investigating agent] would subject him to criminal liability and therefore is not a statement against interest" because, in part, the agent "warned [the declarant] that he could be subject to criminal liability and read [the declarant] his Miranda rights"). Of course, the government has since represented to the Court that Mr. Olawuyi is not likely to be extradited to the United States, but there is nothing in the record that indicates that Mr. Olawuyi was informed of this when he gave his statement. Indeed, SA Oviedo-Clark repeatedly told Mr. Olawuyi that she had to read him the *Miranda* warnings because the FBI is required to do so for "everyone that we

interview in the United States." Doc. 230-1 at 4: 5-6, 2:8-9. She also mentioned to him that "this is a case from the United States" and that she was asking him questions sent from the case agent. *Id.* at 5:14-17. These statements, in combination with the *Miranda* warnings, would indicate to Mr. Olawuyi that there was a pending case in the United States and that his statements could potentially subject him to criminal liability. Importantly, Mr. Olawuyi admitted that he was aware that Mr. Ogunlaja had been arrested and indicted for his alleged fraudulent transactions with Mr. Olawuyi, thus indicating that he knew there was a possibility his statements could subject him to prosecution in the United States. *Id.* at 35:16-24. Accordingly, Mr. Olawuyi was subjectively aware that his statements were against his penal interest and the second factor under Rule 804(b)(3) is satisfied. *Spring,* 80 F.3d at 1460 (defendant must show that declarant's statements were against interest).

Lastly, in order to admit Mr. Olawuyi's statements, there must be sufficient corroboration to indicate the trustworthiness of the statement. *Spring,* 80 F.3d at 1460. "[T]he inference of trustworthiness from the proffered 'corroborating circumstances' must be strong, not merely allowable." *Lozado,* 776 F.3d at 1132 (quoting *United States v. Salvador,* 820 F.2d 558, 5561 (2d Cir. 1987)). To be sure, "the Tenth Circuit has not squarely addressed how a statement must be corroborated," but it "has held the declarant's credibility and the circumstances of the statement bearing on its truthfulness can both be considerations." *United States v. Baca,* 447 F. Supp. 3d 1149, 1213 (D.N.M. 2020) (quoting *United States v. Hammers,* 942 F.3d 1001, 1011 (10th Cir. 2019)) (internal quotations omitted). Importantly, while the Court may consider the declarant's credibility, "the court does not have to conclude that the statements sought to be admitted were surely true, for it is the role of the jury—not the court—to assess the credibility of witness testimony." *Lozado,* 776 F.3d at 1132 (quoting *United States v. Doyle,* 130 F.3d 523, 543 (2d Cir.

11

1997)).

When assessing whether there is sufficient corroboration, courts do not necessarily look to whether every fact in the statement is corroborated by other facts in evidence, but rather look at whether the circumstances under which the declarant made the statement would tend to result in a truthful statement. *See United States v. Price,* 134 F.3d 340, 347 (6th Cir. 1998) ("[R]ule 804(b)(3) does not require that the information within the statement be clearly corroborated; it requires only that there be corroborating circumstances which clearly indicate the trustworthiness of the statement, itself."). For instance, courts look to whether the declarant and the defendant had a close relationship that would give the declarant an incentive to lie. *See United States v. Morrow,* 79 F.4th 1169, 1183 (10th Cir. 2023) (insufficient corroborating circumstances where declarant was the defendant's brother and therefore had an incentive to lie to protect the defendant). The extent to which a declarant inculpates themselves can also weigh towards finding that the statement is sufficiently trustworthy. *Williamson,* 512 U.S. at 600 (noting that the fact that a statement is self-inculpatory makes it more reliable).

In the instant case, there is no close relationship between Mr. Olawuyi and Mr. Daramola. This weighs in favor of finding that that Mr. Olawuyi's statements are sufficiently trustworthy. *United States v. Salas-Aguayo,* No. 12-CR-3109, 2024 WL 453642, at *19 (D.N.M Feb. 6, 2024) (declarant's statement was sufficiently corroborated in part because the declarant did not have a close relationship with the defendants). Furthermore, there is no indication that the statement was given to curry favor with investigators or secure a plea deal. *Cf. United States v. Feldman,* 761 F.2d 380, 388 (7th Cir. 1985), *overruled on other grounds by United States v. Rojas-Contreras,* 474 U.S. 231 (1985) (declarant's statements were untrustworthy where he gave statements in exchange for immunity). And he gave the statement voluntarily and while out of custody, which

removed the incentive to lie to avoid further detention. *See United States v. Garcia,* 897 F.2d 1413, 1421 (7th Cir. 1990) (declarant's statements were sufficiently trustworthy in part because he gave them voluntarily after being advised of his *Miranda* rights). These factors weigh in favor of finding that the statements were sufficiently trustworthy under Rule 804(b)(3).

Importantly, Mr. Olawuyi's statements, while sometimes contradictory or confusing, overall were self-inculpatory, which tends to prove their reliability. *Williamson,* 512 U.S. at 600. For instance, he admitted that he purchased a car from co-defendant Ogiozee using funds fraudulently attained from two victims of romance fraud. Doc. 230-1 at 15:1-3. Although he claimed not to remember the full name of the victim in this case, or the identity he used to defraud her, he admitted that he did defraud the victim and explained that he used many fake identities across his different fraud schemes. *Id.* 17:8-10, 18:18-19:1, 19:8-13. He also provided details as to how he used middlemen as part of the fraud on the victim in this case and admitted to deleting evidence of his past misconduct. *Id.* at 20:19-21, 22:21-23:6, 29:14-18, 31:5-6. Admittedly, at several points he claimed to have trouble remembering details and was then able to recall them once prompted. *Id.* at 24:18-20, 34:13-14 (noting that the name Olutayo Ogunlaja sounds familiar, but later admitting that he lived with Mr. Ogunlaja in Malaysia); *Id.* at 17:8-10, 44:18-23 (initially claiming a vague memory of a "lady called Brenda" but later claiming that his relationship with B.D. led him to become more religious). However, the Court notes that while this may cast doubt on the accuracy of some of Mr. Olawuyi's statements, it is not the Court's role to ensure that the statements are "surely true," but merely to determine whether sufficient indicia of trustworthiness are present such that a jury may make its own credibility determination at trial. *Lozado,* 776 F.3d at 1132. The self-inculpatory nature of Mr. Olawuyi's statements thus outweighs the minor inconsistencies in favor of finding that the statements are sufficiently trustworthy. *Compare Id.*

(excluding declarant's statements in part because the declarant dramatically changed his story when confronted with inconsistencies regarding the amount and type of ammunition discovered in defendant's car); *see also United States v. Garcia,* 986 F.2d 1135, 1140 (7th Cir. 1993) (admitting declarant's statements even though there were minor inconsistencies because the statements were overall self-inculpatory and did not appear to be made to curry favor with the government).

Having found that Mr. Olawuyi is an unavailable declarant and that his statements were made against his penal interest and under circumstances that sufficiently corroborate the truthfulness of his statements, the Court will grant Mr. Daramola's Motion and admit the statements that indicate Mr. Olawuyi engaged in fraud with an unknown number of middlemen and that Mr. Olawuyi did not know the identities of these middlemen. However, two issues before the Court remain. First, the government requests that they be able to submit the entire recording of Mr. Olawuyi's statements into evidence under the Rule of Completeness. Further, Mr. Ogunlaja requests that the Court bar admission of statements mentioning Mr. Ogunlaja under the Confrontation Clause of the Sixth Amendment. The Court finds that under the Rule of Completeness, the government is entitled to present the entire recording, but neither Mr. Daramola nor the government will be permitted to admit the statements referencing Mr. Ogunlaja.

Under Federal Rule of Evidence 106, "if a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part—or any other statement–that in fairness ought to be considered at the same time." Fed. R. Evid. 106. Furthermore, "the adverse party may do so over a hearsay objection." *Id.* The Tenth Circuit considers four factors in determining whether proffered evidence should be admitted under the rule of completeness. *United States v. Williston,* 862 F.3d 1023, 1038 (10th Cir. 2017). The four factors are whether the proffered statement a party seeks to admit under the rule of completeness "(1) explains the

14

admitted evidence, (2) puts the admitted evidence in context, (3) does not itself mislead the jury, and (4) ensures that the jury can fairly and impartially understand the evidence." *Id.* at 1038-39. Here, Mr. Daramola seeks to admit Mr. Olawuyi's statements regarding the roles of middlemen in the instant fraud and his lack of knowledge regarding the identities of the middlemen. The remainder of the recording discusses Mr. Olawuyi's own role in the fraud. Applying the *Williston* factors, the remaining statements explain the admitted evidence and provide context for the statements as they provide a picture of the larger romance fraud scheme that the defendants participated in. Furthermore, permitting the rest of the recording into evidence will allow the jury to fairly and impartially weigh Mr. Olawuyi's credibility and will not of itself mislead the jury. Accordingly, the Court finds that the government will be permitted to admit whatever portions of the recording that Mr. Daramola omits, with the exception of the statements referencing Mr. Ogunlaja, as explained below.

Mr. Ogunlaja asks the Court to bar the admission of any statements referencing him or his role in the instant fraud as this would be a violation of the Confrontation Clause. The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. Amend. VI. In *Crawford,* the Supreme Court held that the Confrontation Clause demands that testimonial out-of-court statements must be excluded unless the declarant is actually unavailable and the defendant has had an opportunity to cross-examine the declarant ahead of trial. *Crawford v. Washington,* 541 U.S. 36, 54 (2004). Statements are testimonial where they are "made for the purpose of establishing or proving some fact." *United States v. Smalls,* 605 F.3d 765, 776 (10th Cir. 2010) (quoting *Davis v. Washington,* 547 U.S. 813, 823-24 (2006)). For instance, "an accuser who makes a formal

statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Id.*

Here, Mr. Olawuyi's statements against Mr. Ogunlaja are testimonial and must be excluded. During his interview, Mr. Olawuyi was asked if he, as part of his romance fraud schemes, ever sent money to Mr. Ogunlaja. Doc. 230-1 at 24:18-19. In response, Mr. Olawuyi described how he met Mr. Ogunlaja, admitted that they frequently engaged in fraudulent transactions, and stated that Mr. Ogunlaja knew that the $20,000 Mr. Olawuyi sent him as part of the instant offense came from a fraudulent source. *Id.* at 26:16-17, 31:25-32:1, 32:20, 36:7-8, 39:23-24. Under Tenth Circuit precedent, statements are testimonial "if a reasonable person in the position of the declarant would objectively foresee that his statement might be used in the investigation or prosecution of a crime." *United States v. Summers,* 414 F.3d 1287, 1302 (10th Cir. 2005).[3] As noted above, Mr. Olawuyi was explicitly informed that he was being question in relation to a case pending in the United States and that the case agent had asked SA Oviedo-Clark to ask Mr. Olawuyi some questions. He was also read his *Miranda* rights and therefore was informed that any of his statements could be used in a future criminal prosecution. A reasonable person in Mr. Olawuyi's position would therefore objectively foresee that his statement might be used in the investigation or prosecution of a crime. *Cf. United States v. Cook,* 599 F.3d 1208, 1216 (10th Cir. 2010) (finding that statements were nontestimonial because the circumstances surrounding the statements "were nothing akin to police interrogation"). Accordingly, his

---

[3] The Tenth Circuit has recognized a tension between the *Summers* decision and the Supreme Court's definition of testimonial statements in *Davis,* which provides in part that statements are testimonial during a police interrogation when the "primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecutions." *See Smalls,* 605 F.3d at 778 ("Upon close inspection, *Summers'* definition of 'testimonial' appears somewhat in tension with *Davis'* strictures, and perhaps overly broad[.]"). Because the Tenth Circuit has not resolved this question, the Court applies the definition in *Summers.*

statements were testimonial in nature.

Because Mr. Olawuyi is unavailable to testify at trial, and Mr. Ogunlaja has not had an opportunity to cross-examine him, and will not have such an opportunity before trial due to Mr. Olawuyi's residence in Nigeria, admission of Mr. Olawuyi's statements against Mr. Ogunlaja is barred by the Confrontation Clause. *Crawford v. Washington,* 541 U.S. at 54. Thus, neither Mr. Daramola, nor the government, may admit any of the statements from Mr. Olawuyi's interview that reference Mr. Ogunlaja. [4]

## CONCLUSION

The Court finds that there is sufficient evidence that Mr. Olawuyi's statements were against his penal interest and that there are sufficient corroborating circumstances such that his statements are trustworthy under Rule 804(b)(3).

**IT IS THEREFORE ORDERED** that Mr. Daramola's Second Motion in Limine [Doc. 207] is GRANTED, consistent with this Memorandum Opinion and Order.

**IT IS FURTHER ORDERED** that neither Mr. Daramola nor the government may introduce any portion of Mr. Olawuyi's interview that references Mr. Ogunlaja.

ENTERED this 11th day of December 2024.

_____
MARTHA VÁZQUEZ
SENIOR UNITED STATES DISTRICT JUDGE

---

[4] The Court notes that this ruling is not inconsistent with its ruling that the government may present the rest of the recording under the Rule of Completeness. The Supreme Court has made clear that Confrontation Clause violations bar admission of statements otherwise admissible under the Federal Rules of Evidence. *Crawford,* 541 U.S. at 61 ("[W]e do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence…"). Accordingly, even though the statements referencing Mr. Ogunlaja could come in under the Rule of Completeness, they are nonetheless barred by the Confrontation Clause.

17